Plaintiff filed this suit to collect $148.95 allegedly due his wife for commissions earned while serving as a real estate saleswoman for the defendant, doing business as the Gamble Realty Company.
$122.50 of the amount was claimed as a commission on a sale covering property Municipal No. 1511 Arlington Street, Shreveport, Louisiana. The remainder plaintiff claimed was due for commission on a sale to a Mrs. T. R. Chandler.
Defendant in answer admitted that there was a balance due Mrs. Eastman of $6.95 for commission due her on the sale to Mrs. T. R. Chandler and tendered that amount to her with costs at the time answer was filed, but denied that any other commission was due Mrs. Eastman.
The answer admitted that a written contract was brought in by Mrs. Eastman dated October 7, 1947 covering the property on Arlington Street, but alleged that the sale under the contract was never completed because the seller refused to complete the sale on the terms of the contract as turned in by Mrs. Eastman, and that consequently her attempt to sell the property "fell through." The answer further admitted that a sale was completed on December 1st between the parties to the October 7th contract, but set forth that the sale was on different terms and that defendant's commission was included with $500 advanced by his son in a second mortgage note and that all payments on the note made prior to the filing of the answer, had, by agreement, been applied to his son's portion of the note, and set forth that, even should the Court find a commission due *Page 643 
Mrs. Eastman, her demands were premature.
The Judge of the City Court gave judgment in favor of plaintiff for $129.45 ($122.50 plus $6.95), and defendant's appeal from that judgment is now before us.
Mrs. Eastman testified that she was working for defendant under an arrangement whereby she was to receive one-half of the usual 5% real estate commission on real estate listed for sale with defendant and sold through her efforts; that the Arlington Street property was so listed; that she was still in the employ of Mr. Gamble on October 7th when she, in response to a telephone call, carried the prospective purchasers to the Arlington Street property where, after bringing the parties together, she prepared a contract for sale of the property and received a $40 payment "to seal the contract" and that she turned the contract and $40 over to defendant in his office and that the one-half of the commission due her on this sale — after deducting $25 admitted by both parties to be due to a Mrs. Barlow for securing an exclusive listing — amounted to the $122.50 awarded her by the City Court for her efforts in the Arlington Street property sale.
Mr. Gamble testified that the contract and $40 were turned over to him as contended by plaintiff, but that subsequently, he found that the owner was unwilling to sell for the $1,000 down payment set forth in the contract; that Mrs. Eastman left his employ on the afternoon of the day the contract was signed and that the sale was consummated between the same parties only after he had arranged for a first mortgage loan and for his son to advance $500 in cash, and after he had consented to have $245 due him (his commission) included with his son's second mortgage note.
Mrs. A. A. McKelvie, a member of the real estate board, testified that it was usual for the management to "work out the sale" and usual for the salesman to earn a commission "if she brings the buyer and seller together and brings them to the office * * *."
Mrs. Sally Dillion Lewis testified that she was employed as a saleswoman by defendant and answered "yes" to the question by counsel for defendant: "Is it the rule (in the Gamble realty office) that the salesman has to take the transaction through and complete it before any commission is earned?" However, it developed on cross-examination that she began work November 1, 1947. Proof of the rules and practices followed by Mr. Gamble after plaintiff had obtained the contract and left his employ would not be as persuasive as similar evidence covering the time prior to the date of the contract forming the basis for the current suit.
The record shows that the sale on December 1st was completed between the same parties, and for the same total purchase price set in the October contract signed through Mrs. Eastman's efforts. Defendant retained half the 5% commission on sales made by his salesmen, including Mrs. Eastman, and was furthering his own business when working out loan arrangements satisfactory to both parties.
We find that it was through Mrs. Eastman's efforts that the parties were brought together and the essentials of the sale were agreed upon and reduced to writing and signed. Under her agreement with Mr. Gamble, her employee half of the commission was earned, provided the sale was consummated and the commission received by her employer.
The record does not disclose any agreement that Mrs. Eastman's right to commissions would be forfeited on leaving defendant's employ. Under these circumstances, she was entitled to collect the agreed one-half of the 5% commission due Mr. Gamble on sales made by her as saleswoman before leaving his employ and subsequently completed by him as broker. Barilleau v. Paquet, La. App., 159 So. 418.
Since the evidence shows that it was the custom in defendant's office for salesmen to receive their one-half commissions only as the whole was actually received by Mr. Gamble, we deem it equitable that plaintiff should be paid her portion of the commission only as the installments covering Mr. Gamble's commission on the Arlington Street property are received by him. *Page 644 
The judgment appealed from is affirmed insofar as it awards plaintiff the $6.95 admittedly due. The remainder of the judgment is affirmed but subject to the condition that defendant shall have the right to a stay of execution for any portion of the commission due plaintiff that has not been actually collected by defendant.
Costs of both Courts to be divided equally between plaintiff and defendant.